Hajrt, J.
 

 The record in this case calls for the determination of the validity of a contract between certain interested parties purporting to regulate and fix the retail prices for the sale of cigarettes in the state of Ohio. Such determination requires an examination of the Fair Trade Act of the state, the terms of the contract, the circumstances surrounding its execution, and the effect of its operation.
 

 The Ohio Fair Trade Act (116 Ohio Laws, pt. 2, 185), effective July 9, 1936, is a part of Chapter 31,
 
 *404
 
 Title II, Part Second of the General Code, defining and dealing generally with the subject of “trusts.” Specifically, the act embraces Sections 6402-2 to 6402-9, inclusive, General Code, and in general removes from the operation of the antitrust sections of the chapter certain so-called fair trade contracts, and permits producers or distributors to enter into a contract with retailers to establish minimum retail prices on commodities which bear the trademark, brand or name of the producer or owner of such commodity which is in fair and open competition with commodities of the same general class produced by others, and makes such contracts binding upon retailers who have notice thereof even though they are not parties to such contracts.
 

 The validity of the Ohio Fair Trade Act has not been questioned in this action. Statutes very similar to our Fair Trade Act have been held constitutional in other states and by the Supreme Court of the United States. See
 
 Seagram-Distillers Corp.
 
 v.
 
 Old Dearborn Distributing Corp.,
 
 363 Ill., 610, 2 N. E. (2d), 940, affirmed 299 U. S., 183, 81 L. Ed., 109, 57 S. Ct., 139;
 
 Max Factor & Co.
 
 v.
 
 Kunsman,
 
 5 Cal. (2d), 446, 55 P. (2d), 177.
 

 The only question before this court is whether the plaintiff may enjoin the defendant from selling cigarettes at retail below the prices fixed by the contract allegedly executed in compliance with the provision of Sections 6402-2 to 6409, General Code. Squarely presented is the question whether the contract is valid.
 

 By statute in this state, a combination between persons for the purpose of creating or carrying out restrictions in trade or commerce is unlawful. Section 6391, General Code, provides that a contract wherein “two or more persons, firms, partnerships, corporations or associations of persons, * * * agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure, or
 
 *405
 
 by which they shall in any manner establish or settle the price of an article, commodity or transportation between them or themselves and others, so as directly or indirectly to preclude a free and unrestricted competition among themselves, purchasers or consumers in the sale or transportation of such article or commodity, or by which they agree to pool, combine or directly or indirectly unite any interests which they have connected with the sale or transportation of such article or commodity, that its price might in any manner be affected,” is unlawful, against public policy and void. The contract in this case clearly comes within the purview of this section of the Code, unless it is exempted by reason of the special provisions of Sections 6402-2 to 6402-9, General Code.
 

 The purpose clause of the act, Section 6402-2, General Code, is as follows:
 

 “ * * * to promote the public welfare by protecting the general public, trade-mark owners and distributors against injurious and uneconomic practices in the distribution of articles of standard quality bearing a trademark, brand or name.”
 

 Section 6402-3, General Code, provides as follows:
 

 “No contract relating to the sale or resale of a commodity which bears, or the label or container or content of which bears, the trademark, brand, or name of the producer or of the owner of such commodity and which is in fair and open competition with commodities of the same general class produced by others shall be deemed in violation of any law of the state of Ohio by reason of any of the following provisions which may be contained in such contract:
 

 “ (a) That the buyer will not resell such commodity at less than the minimum price stipulated by the vendor.
 

 “(b) That the vendee or producer require any person to whom he may resell such commodity to agree that he will not, in turn, resell such commodity at less
 
 *406
 
 than the minimum price stipulated by such vendor or by such vendee. * * * ’ ’
 

 Then follow certain provisions designating situations in which such contracts shall not apply, as when the owner of stock is closing out business or when the commodity has been damaged or deteriorated or when the commodity is sold by order of the court.
 

 The other pertinent sections of the act are as follows:
 

 Section 6402-4, General Code: “Whoever knowingly and wilfully advertises, offers for sale or sells any commodity at less than the minimum price stipulated in any contract entered into pursuant to the provisions of section 2 of this act, whether said person so advertising, offering for sale or selling such commodity is or is not a party to such contract shall be deemed guilty of engaging in unfair competition and unfair trade practices and is actionable at the suit of any person damaged thereby.”
 

 Section 6402-5, General Code: “Any person violating the provisions of this act shall be liable at the suit of any other retailer of such commodity or at the suit of any other person or persons injured thereby, including the producer of such commodity, which suit may be for an injunction against such practice.”
 

 Section 6402-6, General Code: “This act shall not apply to any contract or agreement between producers or between wholesalers or between retailers as to sale or resale prices.”
 

 Section 6402-6, General Code, is most important and clearly discloses the character of a contract which is not permitted by the act. The purpose and intent of the legislation is to allow the manufacturer or distributor of a commodity of standard quality bearing a trademark, brand or name to protect his particular property from being sold at retail at indiscriminate prices. Therefore, a contract to effect that purpose must be “vertical” in character and not “horizontal,”
 
 *407
 
 that is, the contract must be between the producers of such commodities and their wholesalers or distributors, between producers and retailers, or between wholesalers or distributors and retailers, but such contracts are not authorized between producers themselves, between wholesalers themselves, or between retailers themselves as to sale or resale prices. Contracts of the latter type are price fixing in effect and are forbidden by the statutes of this and other states.
 
 Joseph Triner Corp.
 
 v.
 
 McNeil,
 
 363 Ill., 561, 2 N. E. (2d), 929;
 
 Seagram-Distillers Corp.
 
 v.
 
 Old Dearborn Distributing Corp., supra; Goldsmith
 
 v.
 
 Mead Johnson & Co.,
 
 176 Md., 682, 7 A. (2d), 176;
 
 Frank Fischer Merchandising Corp.
 
 v.
 
 Ritz Drug Co.,
 
 — N. J. Eq., —, 19 A. (2d), 454;
 
 United States
 
 v.
 
 Socony-Vacuum Oil Co., Inc.,
 
 310 U. S., 150, 84 L. Ed., 1129, 60 S. Ct., 811.
 

 The contract under which the plaintiff in this case bases his right to bring this action is in its form a contract between a number of distributors and retailers for the purpose of maintaining the price of all cigarettes sold by retailers. The combination contract between all distributors on the one hand and all the retailers on the other, 3 s not only a contract between the two classes but is in effect a horizontal contract between such distributors fixing or “stabilizing” prices with the result that the price of each of 17 brands of cigarettes is fixed at 16 cents per package. Such result could not have been lawfully accomplished had the distributors of these same 17 brands of cigarettes entered into a contract to the effect that these brands should be sold at retail for not less than 16 cents per package. Such a contract admittedly would be in violation of the law against combinations in restraint of trade.
 

 That such price fixing by the distributors and jobbers of cigarettes was the purpose intended by the consummation of this contract is evident from the surrounding circumstances shown by the record. On
 
 *408
 
 August 21, 1940, the chairman of the tobacco division of the Ohio Fair Trade Committee issued a price list, listing retail prices for 37 brands of cigarettes, a copy of which price list was .enclosed with a letter to the retail cigarette dealers of the state including the defendant, stating that he, the chairman, was happy to notify the retailers that:
 

 w * * * jobbers in the state of Ohio are proceeding with the enrollment of
 
 all
 
 brands of cigarettes under Fair Trade.
 

 “These prices will go into effect the 3rd of September, and I am writing you now for your support in this move on the part of the retailers and chain stores.
 

 “The fair trade attorneys assure us that this plan is perfectly legal and that there is no reason why it cannot result in price stabilization of cigarettes.” (Italics ours.)
 

 The letter then solicits a contribution of $2 per store to “finance this plan.”
 

 Under date of September 10, 1940, a second letter was mailed by the chairman to the cigarette retail dealers of the state in which he says :
 

 “This is to advise that
 
 we have effected a price stabilisation
 
 on all brands of cigarettes in the state of Ohio, under provisions of the Ohio fair trade laws.
 

 “For your information, I am enclosing a copy of the court order restraining a chain drug firm from violating these fair trade prices, and also a copy of the price list.
 

 “I sincerely appreciate your support
 
 which helped make this price stabilisation on cigarettes possible.
 
 However, it is imperative that we receive from you by return mail a contribution to help finance the pending lawsuit and whatever else may arise.” (Italics ours.)
 

 The evidence also disclosed the fact that the new price established by the jobbers increased the retail prices on all leading brands of cigarettes from 15
 
 *409
 
 cents to 16 cents per package. The cost to retailers was shown to be 13V2 cents per package if bought from the manufacturer, but 14 cents if bought through a jobber.
 

 In the cases heretofore cited as upholding the fair trade acts of other states, the facts show “vertical” contracts between the manufacturer or wholesaler with distributors, or between distributors and retailers, dealing with a single commodity. None of them presents facts showing a single contract between all the manufacturers or wholesalers and retailers covering the entire field of a given commodity within a state.
 

 The contract here under consideration, in which the wholesalers or distributors of all brands of cigarettes fix the prices of all brands and have these prices agreed to by the retailers, is one which destroys all competition in the cigarette market and violates the antitrust laws of this state.
 

 Since these contracts are authorized as exceptions to the general rule of law forbidding restraint of trade and monopolistic schemes, they must be strictly construed and held within provisions of the law which permits them.
 
 We
 
 hold that the contract in question does not come within the spirit or letter of the Fair Trade Act, but is illegal and void.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Turner, Williams, Zimmerman and Bettman, JJ., concur.
 

 Matthias, J., not participating.