JOSEPH PAZEN, complainant-respondent,

*v.*

SILVER ROD STORES, INC., a body corporate, defendant-appellant.

[Argued May 28th and 29th, 1941. Decided October 20th, 1941.]

408

*Mr. Jacob E. Max,* for the appellant.

*Messrs. Carey & Lane* (*Mr. Harry Lane* and *Mr. Malcolm L. Fleischer,* the latter of the New York bar, of counsel), for the respondent.

The opinion of the court was delivered by

Heher, J.

The fundamental question is one of statutory construction —*i. e.,* whether the purported contract is within the purview of *R. S. 1937, 56:4-3, et seq.,* as amended by chapter 165 of the Laws of 1938 (*P. L. p. 375*), commonly known as the "Fair Trade Act," or serves to restrain trade in the vicious sense, and is therefore void as in contravention of public policy. We find it to be in the latter category.

The agreement is between a "wholesaler" and a "retailer." It fixes minimum retail prices for eighteen of the leading brands of cigarettes to be sold by the former to the latter. These cigarettes are produced by eleven different manufacturers, none of whom has laid down minimum prices, either wholesale or retail, or professes any interest whatever in the enforcement of the price stipulations under review.

Concededly, the agreement is but part of a concerted plan of wholesalers and retailers, by identical contracts, to control the prices of such commodities, without the participation of the manufacturer. Agreements prescribing like minimum retail prices have been made between twelve wholesalers and numerous retailers doing business in this state: and the particular agreement recites that these articles of commerce "are in fair and open competition with cigarettes of the same general class produced by others;" that both the wholesaler and the retailer have "an established and substantial business and interest in connection therewith," and the price stipulation is "in the interest of protecting 'Wholesaler,' 'Retailer' and the public against injurious and uneconomic practices in the distribution of cigarettes;" and that the " 'Wholesaler' has entered and is entering into fair trade contracts with numerous other persons selling cigarettes at retail" in this

state, embodying "provisions for minimum retail selling prices identical with those provided for" therein.

The theory of the bill of complaint is that, through "advertising" and "the intrinsic merits" of the specific cigarettes, "an extremely valuable good will * * * attaches to them;" that respondent's "business * * * in the sale" thereof "has become large and active" and profitable; that "similar fair trade agreements have been entered into by several hundred retailers within the State of New Jersey * * * with wholesalers engaged in the distribution within the state * * * of over 85% of all of the said brands of cigarettes distributed" therein "for sale at retail," and the prices thus fixed "are in all respects uniform and are adhered to by the great majority of retailers" within the state; that the cited statute embodies "a public policy * * * that the fixing of prices for retail sale of a standardized commodity should be protected and that the sale of any such standardized commodity to consumers should not be below the price fixed for the retail sale" thereof, and that the vending of such merchandise as "loss-leaders," i. e., at prices less than those stipulated—ofttimes below cost—termed a "pernicious practice," will result in the loss to respondent of "a great deal of his trade" therein, and "irreparable damage to both the wholesalers and the retailers." Such is the principle of the order under review. The learned Vice-Chancellor was of the opinion that the agreement was not the product of "an illegal combination to fix prices," but rather one designed to serve the essential statutory policy.

Appellant adduced evidence tending to show that "approximately ninety per cent. of the cigarettes consumed in the State of New Jersey are sold at prices lower than the prices fixed in" the agreement under consideration; and it is said that the purpose is, by a system of such agreements among wholesalers and retailers, "to fix the prices at which ninety-nine per cent. of cigarettes consumed" in this state "are sold," and that the effect of the combination "would be to destroy fair and open competition of the brands of cigarettes sold" in this state, "to the detriment of the general public." It also introduced proof that the annual sales in the state of the

particular cigarettes aggregate $28,500,000;. and it is maintained that the consummation of the scheme will put an additional annual burden upon the consumers of $2,150,000. It is also asserted that, although there are approximately seventy wholesalers in this state who buy direct from the manufacturers, only twelve have joined the combine.

Respondent offered proof that "the fair trade agreements referred to in the bill of complaint * * * have been entered into by over 95% of the retailers throughout the state;" that "between 30,000 and 40,000 notices of the entering into of said fair trade agreements and the prices therein fixed have been sent to retailers throughout the state;" and that "there are only a few or a mere handful who are not at the present time adhering to the fair trade prices."

The bill and the proofs exhibit a confederation in restraint of trade illegal at common law. *Trenton Potteries Co.* v. *Oliphant, 58 N. J. Eq. 507.* And it is not within the modification of that policy embodied in the *Fair Trade Act, supra.*

As said by the Federal Supreme Court, in a deliverance by Mr. Justice Sutherland, the permissive statutory restriction is designed to be protective of "the property—namely, the good will—of the producer, which he still owns." Price limitation "is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself." The statute enjoins not the "bare disposition of the commodity," but rather a "use of the trade-mark, brand or name in accomplishing such disposition," considered "an assault upon the good will," inimical alike "to the good will and business of the producer and distributor" of the goods and the general public, and so "unfair competition." The legislative object is not to abridge the purchaser's right to fix the sale price of the commodity *qua* commodity, but to preclude a sale "with the aid of the good will of the vendor" when that is necessary "to protect that good will against injury." The brand or trade-mark is viewed as evidential of the "origin" and "quality" of the goods, and therefore symbolic of good will. *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp., 299 U. S. 183; 57 S. Ct. 139; 81 L. Ed. 109.* The protec-

tion of the good will of the "distributor" of the commodity is likewise within the reason and spirit of the statute. *Schenley Products Co.* v. *Franklin Stores Co., 124 N. J. Eq. 100.* The title of the original act plainly signifies such to have been in the legislative view. *Chapter 58 of the Laws of 1935; P. L. p. 140.*

The term "distributor" is not defined in the statute; and we have no occasion to determine the sense in which it is used. *Section 56:4-4* excludes from the statutory class contracts or agreements "between wholesalers or between producers or between retailers as to the sale or resale prices." To satisfy this criterion, it is requisite that the price-fixing stipulation be " 'vertical' in character and not 'horizontal,' that is, the contract must be between the producers of such commodities and their wholesalers or distributors, between producers and retailers, or between wholesalers or distributors and retailers, but such contracts are not authorized between producers themselves, between wholesalers themslves, or between retailers themselves as to sale or resale prices." *Rayess* v. *Lane Drug Co., 138 Ohio St. 401; 35 N. E. Rep. (2d) 447.* See, also, *Joseph Triner Corp.* v. *McNeil, 363 Ill. 559; 2 N. E. Rep. (2d) 929; affirmed, Old Dearborn Distributors Co.* v. *Seagram-Distillers Corp., supra.*

The agreement here is one of a system for price maintenance formulated by a group of wholesalers, and is therefore a component part of a combination in conflict with our subsisting common law enjoining contracts in restraint of trade and the imposition of restrictive sale conditions, and so within the interdicted class. The design concededly is thus to regulate, not the price of a single commodity to safeguard the producer's or distributor's good will, but the prices of almost all products in the particular field for the common enrichment of the wholesalers and retailers, quite apart from the conservation of their good will symbolized by the trade-mark. The manufacturers of these cigarettes could not enter a combine for that purpose; neither could the distributors unite to that end. The wholesalers are under a like disability. A contrary construction of the statute would put price control beyond the manufacturers and producers and in this wise

jeopardize their property rights. The ultimate aim is a monopoly in a sphere of business essentially competitive. And the statutory device may be invoked only where the "commodity" is in "fair and open competition with commodities of the same general class produced by others * * *." *R. S. 1937, 56:4-5.*

The case of *Schenley Products Co.* v. *Franklin Stores Co., supra,* reversing *122 N. J. Eq. 69,* is not to the contrary. There, the complainant was the "sole immediate distributor" of liquors known as "Schenley Brands," manufactured "exclusively for initial distribution" by the complainant in this state and elsewhere in the United States, and not sold by the producer to any wholesaler or retailer or to any other person in this state; and the complainant was also a subsidiary of the corporate producer. And the contract dealt only with the products of one producer. That contract was plainly one designed to be protective of the good will of the producer and its subsidiary, and so within the statute, and in the special circumstances enforceable at the instance of the latter even though it was not formally a party thereto. See, also, *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corp., supra.*

The enactment is not to be given an interpretation in derogation of the common law except as explicitly laid down. *Ingersoll* v. *Goldstein, 84 N. J. Eq. 445; Bathasweet Corp.* v. *Weissbard, 128 N. J. Eq. 135; Rayess* v. *Lane Drug Co., supra.*

The particular agreement is a constituent of a unitary whole violative of sound public policy as defined by the common law, and reiterated in the statute under review, and therefore void.

The order is accordingly reversed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, WOLFSKEIL, HAGUE, THOMPSON, JJ. 14.