## Muse-Art Corporation, Appellant, *v.* Philadelphia.

Argued January 8, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Nochem S. Winnet,* with him *Charles M. Solomon, Lawrence D. Biele and Fox, Rothschild, O'Brien & Frankel,* for appellant.

*Abraham Wernick,* Deputy City Solicitor, with him *Abraham Nathanson,* Assistant City Solicitor, for appellee.

OPINION BY MR. JUSTICE JONES, March 23, 1953:

The plaintiff corporation seeks to restrain the defendant city "from taking affirmative action to enforce the collection of certain moneys which the City claimed were due from the plaintiff" as the licensee of "rights and privileges" granted under the city's Sound Reproduction License Ordinance of 1945. After a hearing on the merits, the chancellor filed an adjudication and decree nisi dismissing the bill at the plaintiff's costs. Exceptions by the plaintiff were overruled in a thorough and well considered opinion by the learned chancellor acting for the court en banc. From the final decree consonantly entered, the plaintiff has appealed; and the matter is now before us upon an agreed statement of facts from which we summarize the following.

Some time prior to July 1937, the City of Philadelphia, in the exercise of authority not questioned, granted permission to the Bell Telephone Company of Pennsylvania to place wires and conduits under certain of the city's streets (Sec. 4 of the Act of May 1, 1876, P. L. 90, as amended by Sec. 1 of the Act of June 25, 1885, P. L. 164, 15 PS §2314, and by Section 3 of the Act of July 22, 1919, P. L. 1123, 15 PS §2333). By ordinance enacted July 8, 1937, the city granted permission to the plaintiff corporation to use the Bell Company's understreet wires (subject, of course, to agreement between the Bell Company and the plaintiff) for the transmission of music, news and advertising for which the plaintiff was to pay to the city "five per cent. of its entire gross receipts . . . from the exercise, directly or indirectly, of any or all of the rights and privileges granted by this ordinance." The plaintiff operated under this 1937 ordinance until its repeal on July 1, 1945. The occasion for the repeal was the passage on June 27, 1945, of the ordinance herein referred to as the Sound Reproduction License Ordinance of 1945. That ordinance, in the nature of a general authorization, provided that the city could grant by ordinances to specifically designated licensees rights and privileges identical to those granted the plaintiff by the ordinance of July 8, 1937. In consideration of the rights and privileges so granted, the city was to be paid ". . . within fifteen days after the last day of each and every calendar month five per cent of the accrued entire gross business accounts whether collected or not of said Sound Reproduction Licensee received during said month from the exercise, directly or indirectly, of any or all of said rights and privileges granted by ordinance of the City . . . ." Contemporaneously, City Council passed an ordinance granting to the plaintiff and others the rights and privileges to lease and

to use underground wires for the purposes and subject to the conditions of the Sound Reproduction License Ordinance of 1945. The agreed-upon facts state that the plaintiff has paid to the city "5% of its entire gross business accounts". That assertion, taken literally, is obviously a legal conclusion and begs the question here involved.

The plaintiff resists the city's demand for five per cent of its gross accounts for the sales of reproduction equipment and installation charges and five per cent of the sums included in its charges to its customers for copyright fees payable to the American Society of Composers, Authors and Publishers (ASCAP) and Broadcast Music, Inc. (BMI) for the material reproduced and transmitted. These claims amount, respectively, to $4,784.04 and $501.54. The city having threatened to enter judgment against the plaintiff for these sums on the bond given by the plaintiff to secure its liability under the ordinance grant, the plaintiff filed its bill in the instant proceeding.

The appellant poses four questions of law three of which involve propositions which were not raised in the court below and consequently were neither considered nor passed upon there. They do not, therefore, present anything by way of impeachment of the decree under review. Matters not raised by an appellant in the court below will not be considered in support of his appeal. As stated in *McLaughlin v. Monaghan*, 290 Pa. 74, 79, 138 A. 79, ". . . it is sufficient to say no such question was raised in the lower court . . . hence it cannot be considered here. This rule is so familiar and announced in so many recent cases as to make references thereto unnecessary. It would be unfair to convict a trial court of error on a proposition not brought to its attention." This is so even though the question belatedly raised is a constitutional

one: see *Montgomery County Bar Association v. Rinal-ducci*, 329 Pa. 296, 298, 197 A. 924, and cases there cited. The exception to the rule where a question of jurisdiction or public policy is involved (see *Schline v. Kine*, 301 Pa. 586, 590, 152 A. 845) is not presently germane. In any event, the questions which the appellant has raised untimely have, in the aggregate, been squarely decided in *Owl Protective Company, Inc. v. Public Service Commission*, 123 Pa. Superior Ct. 382, 388 et seq., 187 A. 229, and *Philadelphia v. Holmes Electric Protective Company of Philadelphia*, 335 Pa. 273, 277, 278, 6 A. 2d 884, adversely to the appellant's present contentions.

As the learned chancellor succinctly stated,—"The problem then is as to the scope of the City's 5% charge". Section 5 of the Sound Reproduction License Ordinance of 1945 exacts a consideration of "five per cent of the accrued entire gross business accounts whether collected or not . . . received . . . from the exercise, directly or indirectly, of any or all of said rights and privileges granted by ordinance of the City of Philadelphia." This represents a change in the consideration payable to the city under the earlier ordinance of 1937 (the one involved in the *Holmes* case, supra) where the scope of the levy was limited to "gross receipts . . . from all [the licensee's] business done in . . . Philadelphia." However, it is immaterial whether or not the new phrase "from the exercise, directly or indirectly, of any or all of said rights and privileges . . ." constitutes an extension of the source of revenue. The court below, after noting "that the controlling question in this case is not the significance of the words 'gross business accounts' but rather the significance of the words 'from the exercise, directly or indirectly of . . . said rights' ", correctly concluded "that any sale or installation by the plaintiff of equipment used in any

manner whatsoever or in any degree for the reproduction of music by the plaintiff, or connecting with the wires intended for such reproduction of music, is an exercise of the rights and privileges granted by the City." And, that is an end of the matter.

Such charges are, of course, to be limited to receipts by the plaintiff from its subscribers who use music and not from those to whom the plaintiff's services were unrelated to the reproduction of music. We mention this as there seems to be a difference between the parties as to whether some charges for the latter type of services are to be found among the sums claimed by the city. But that presents merely a question of accurate accounting and not a question of law as to the scope of the five per cent levy.

The plaintiff's remaining contentions are equally without merit and are so fully and cogently answered in the opinions for the learned court below as not to warrant further discussion.

Decree affirmed at the appellant's costs.