## Heppe Estate.

Argued May 1, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Dallett Hemphill,* with him *Alexander Hemphill,* for appellant.

*Dunstan McNichol,* with him *Anthony B. Agnew, Jr.,* and *Gilfillan, Gilpin & Brehman,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, October 9, 1970:

Margaret Deal Heppe died on February 17, 1968, leaving a will dated June 19, 1964, a codicil dated October 11, 1965, and a second codicil dated November 30, 1967. All were duly probated by the Register of Wills of Montgomery County. The decedent's will con-

tained various specific legacies to each of her three sons, and left the residue of the estate to her three sons generally. The first codicil contained one pecuniary legacy to appellant, expressed as follows: "Before the disposition of the residue of my estate I give and bequeath the sum of Five Thousand Dollars ($5,000.00) to my faithful employee, Leonard Jerry Dunnigan, provided he survives me and is in my employ at the time of my death."

The second codicil, drawn more than two years later by a different scrivener, contained a number of gifts to the decedent's grandchildren and daughters-in-law, an administrative provision, and the following bequest: "FOURTH: I give and bequeath to Leonard J. Dunnigan for long and faithful service, if he should survive me the sum of Five Thousand Dollars ($5,000.00)."

The named legatee, Leonard J. Dunnigan, survived the testatrix and was in her employ as a domestic servant and cook at the time of testatrix's death. The executor of the estate paid Dunnigan only $5,000. Dunnigan then presented a claim for the additional $5,000 legacy at the audit before the Orphans' Court Division of the Court of Common Pleas of Montgomery County. That court heard evidence on Dunnigan's claim, including testimony from the scrivener of the second codicil—to which appellant Dunnigan failed to object— and entered an adjudication on October 22, 1969, that the second codicil was not cumulative but a mere repetition of the language in the first codicil.

Appellant took six exceptions to the adjudication, of which, two concerning the question whether both requests required that the legatee be an employee of the decedent at her death were sustained pro forma. In his opinion sur exceptions on December 9, 1969, the auditing judge noted that only the first bequest to appellant Dunnigan so required. The auditing judge,

however, reasoned that this error should not affect his earlier adjudication, for the strong similarities between the two bequests indicated that they were repetitious. Appellant then took this appeal on the issues of whether the intrinsic evidence in both codicils is sufficient to overcome a presumption that such legacies are cumulative, and whether the auditing judge erred in hearing testimony from the second scrivener concerning extrinsic facts and testatrix's intent without allowing the appellant to testify.

The general rule on this subject is stated in *Appeal of S. M. Manifold*, 126 Pa. 508, 19 Atl. 42 (1889), where this Court, citing 2 Roper on Legacies 999, said: " 'When two legacies are bequeathed to the same person by different testamentary instruments, viz.: one by the will and the other by the codicil; or when they are given by different codicils, and the testator has given both of the legacies simpliciter, the court in such cases, in the absence of intrinsic evidence, considers that as the testator has given twice, he must prima facie be intended to mean two gifts; and it seems to be immaterial, whether the legacies are of equal or unequal amounts, or whether they are of the same or different natures.' " Id. at 510. See also *Sponsler's Appeal*, 107 Pa. 95 (1884).

Appellee argues that because the legacies were qualified and not simpliciter, the presumption in favor of cumulative legacies has no application. Such an argument is a misapplication of the general rule quoted above.

Probably the most thorough and scholarly treatment of this particular problem by a Pennsylvania court was in *Swain's Estate*, 29 Dist. 361 (Orphans' Ct., Phila. County 1920). There, Judge GEST, summarized the then present state of the law as follows: "It may, however, be considered as settled (1) that where legacies

of equal amount are given by the same instrument, they are presumably repetitious; and (2) where the same thing is given specifically by two different instruments, as, for example, a ring, there can be no duplication, because the same thing cannot be given twice. Where, however, (3) pecuniary legacies of the same or similar sum are given by both instruments to the same persons, the presumption is that they are intended to be cumulative, and will be so awarded unless there appears evidence in the will to show the contrary." Id. at 364.*

Judge GEST then reviewed the history of the law on the subject from its origins in Roman law, through the Middle Ages, and finally its incorporation into and development in English common law. Id. at 364-66. His review led him to conclude that ". . . where the same motive is assigned by the testator for his gift (Hunter Roman Law (2nd ed.)), 925 (or rather it might be said the same purpose is stated for which the gift is made), the presumption that the legacies are duplicated is rebutted . . . ." Id. at 365. That the converse is also true was indicated by Judge GEST earlier in his opinion when, in distinguishing another case, he observed that if it appears from the language of the codicils that the motives for the bequests are different, this supports a holding that the bequests are cumulative. Id. at 363-64 (distinguishing *Ashmead's Estate*, 29 Dist. 128 (Orphans' Ct., Phila. County 1920)).

To summarize, the presumption of cumulative legacies operates when there is no indication of contrary intent manifest on the face of the separate instruments.

---

* Although the case before Judge GEST turned on the more general question of whether a particular codicil should be substituted for a whole will, and he held the bequests to be repetitious, *Swain's Estate*, 29 Dist. 361, 367 (Orphans' Ct., Phila. County 1920), his analysis, with its emphasis on whether the bequests are given for the same or a different cause, is particularly helpful.

To the extent that the testator's intent is revealed in the instruments to be contrary to the presumption, then, of course, the presumption must give way. The presumption is merely a technique used by the court to aid it in interpreting testamentary documents where the testator has given no indication of his or her intent. However, if the intrinsic evidence in the documents tends to support the presumption of separate gifts, it would be anomalous to say that the presumption is inoperable, merely because the legacies were not simpliciter. Only intrinsic evidence *to the contrary* should defeat the presumption. Thus, the decisive issue in the instant case is whether it appears that the motives for the first legacy to Dunnigan are different from the motives for the second. If such a difference can be discerned from the testamentary writings, then the intrinsic evidence supports the presumption of cumulative gifts, and appellant must prevail.

Applying the above analysis to the two codicils involved, the following should be noted. The first codicil has two conditions: (1) that the appellant survive the decedent, and (2) that appellant be in the decedent's employ at the time of decedent's death. The second codicil requires only that appellant survive decedent, the reason for the bequest being stated as "for long and faithful service."

While these two codicils do not make the testatrix's intent clear beyond doubt, we are persuaded that the two legacies are cumulative. The difference in language between them supports the assumption that the two bequests were given for different reasons, the first to induce appellant to continue in decedent's employ, and the second to reward appellant for faithful service already performed. These are separable motives, stated separately, and hence the testatrix's apparent intent to make two different bequests should be effectuated.

Appellant's second argument on appeal is without merit. He argues that because the auditing judge heard extrinsic evidence from the second scrivener, he, the legatee, should also have been allowed to testify. However, an examination of the record reveals that appellant did not object at the time the testimony complained of was offered. It is well settled that matters not raised in the trial court may not be properly argued on appeal, whether direct or collateral, and this Court has followed the practice of not considering matters to which no objection was made, particularly in the cases where, if objection had been timely made, the alleged error could have been immediately and easily rectified if necessary. See, e.g., *Bechler v. Oliva,* 400 Pa. 299, 161 A. 2d 156 (1960) ; *Rosenfeld v. Rosenfeld,* 390 Pa. 39, 133 A. 2d 829 (1957) ; *Sherwood v. Elgart,* 383 Pa. 110, 117 A. 2d 899 (1955).

The decree of the Orphans' Court Division of the Court of Common Pleas of Montgomery County is vacated, and the case remanded for further consistent proceedings. Costs to be paid by the estate.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The opinion of the Court concedes that the two codicils before us "do not make the testatrix's intent clear beyond doubt". I quite agree. Accepting as a guideline, however, as does the majority, Judge GEST's opinion in *Swain's Estate,* I reach the conclusion that the two bequests to appellant are not cumulative. Judge GEST said (29 Pa. Dist. 361 at 365) that ". . . where the same motive is assigned by the testator for his gift . . . the presumption that the legacies are duplicated [i.e., cumulative] is rebutted." As I read the bequests to appellant Dunnigan, the motive behind each was the same, viz., recognition of his fidelity as an em-

ployee of testatrix over a long period. This is explicit in the second codicil (i.e., "for long and faithful service") but is also plain in the first (where appellant is described as "my faithful employee".).

It is true that the first bequest is conditional on appellant being in the employ of testatrix at the time of her death, while the second bequest is not so conditioned. I disagree that this difference indicates a different motivation for the gifts. The absence of the condition in the second codicil merely denotes that the testatrix was then desirous that appellant should have the gift outright, employed by her or not. I cannot on this account construe it as differently motivated than the first, but only as a more liberal or generous substitute.

The second codicil was written by a different lawyer than the first. It is not labelled "Second Codicil", nowhere refers to the first codicil, and gives no sign that the existence of the first codicil was known to the scrivener or remembered by the testatrix. Indeed, the scrivener testified, without objection, that he was totally unaware of the existence of the first codicil and that the testatrix had supplied him only with a copy of her will as constituting her testamentary writings.

I agree with that part of the Court's opinion which holds that the auditing judge was correct in ruling inadmissible appellant's testimony as to statements allegedly made to him by the testatrix, and there is therefore no need to repeat the reasons for the holding.

I would affirm the decision of the court below.

Mr. Justice JONES joins in this dissent.