Commonwealth, Appellant, *v.* Page.
Commonwealth *v.* King, Appellant.

Argued January 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Charles C. Brown, Jr.*, District Attorney, with him *Richard Campbell*, Assistant District Attorney, for Commonwealth, appellant (Appeal No. 95).

*Francis A. Searer*, for appellee.

*Joseph G. Skelly*, with him *William B. Ball*, and *Ball & Skelly*, for amicus curiae, guardians ad litem.

*John J. Dean*, Assistant Public Defender, for appellant.

*Carol Mary Los,* Assistant District Attorney, with her *Robert W. Duggan,* District Attorney, for Commonwealth, appellee (Appeal No. 163).

*Marjorie Hanson Matson* and *Stanton D. Levenson,* for amicus curiae, American Civil Liberties Foundation of Pennsylvania.

OPINION BY MR. CHIEF JUSTICE JONES, March 29, 1973:

We have consolidated these two appeals because both involve the constitutionality of our criminal statutes proscribing abortions.[1]

On October 21, 1968, Barry Page, a motorcycle mechanic with medical training as a Merchant Marine corpsman, pled guilty to the performance of two abortions.[2] Page's guilty plea resulted in his conviction and

---

[1] "§718

"Whoever, with intent to procure the miscarriage of any woman, unlawfully administers to her any poison, drug or substance, or unlawfully uses any instrument, or other means, with the like intent, is guilty of felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding three thousand dollars ($3,000), or undergo imprisonment by separate or solitary confinement at labor not exceeding five (5) years, or both.

"§719

"Whoever unlawfully administers to any woman, pregnant or quick with child, or supposed and believed to be pregnant or quick with child, any drug, poison or other substance, or unlawfully uses any instrument or other means, with the intent to procure the miscarriage of such woman, resulting in the death of such woman, or any child with which she may be quick, is guilty of felony, and upon conviction thereof, shall be sentenced to pay a fine not exceeding six thousand dollars ($6,000), or undergo imprisonment by separate or solitary confinement at labor not exceeding ten (10) years, or both." Act of June 24, 1939, P. L. 872, §§718-719, 18 P.S. §§4718-4719.

[2] Both operations were successfully performed and each "patient" survived the procedure without physical impairment.

a sentence of two-to-five years' imprisonment. There was no direct appeal, but Page did seek, and obtain, relief under Post Conviction Hearing Act provisions, Act of January 25, 1966, P. L. (1965) 1580, 19 P.S. §1180-1 *et seq.*[3] The Court of Common Pleas of Centre County ruled that the anti-abortion statute, Section 718 of the act, was unconstitutional. Pursuant to Section 202(9) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P. L. 673, §202(9), 17 P.S. §211.202(9), the Commonwealth has taken a direct appeal to this Court upon the order granting Page's Post Conviction Hearing Act petition.

Benjamin King, M.D., was convicted of performing an abortion which resulted in the death of his patient.[4] After disposition of post-trial motions which did not include a constitutional challenge to the abortion-causing death statute,[5] Dr. King was sentenced to two-to-five years' imprisonment by the Allegheny County Court of Common Pleas. An appeal was taken by Dr. King to

---

[3] The Commonwealth does not argue that Page "waived" the constitutional question by failing to raise it on direct appeal. Though the "waiver" concept has recognized the legitimate need for procedural regularity, if the Commonwealth is not inclined to argue the issue, we should not raise it sua sponte.

[4] In the course of the abortion, Dr. King perforated the decedent's cervix. She sustained peritonitis, massive hemorrhaging and, as a consequence, suffered severe traumatic shock. The patient expired on December 30, 1967, two days after the abortion procedure.

[5] While generally we will not consider issues, on direct appeal, which were not presented in post-trial motions (*Commonwealth v. Donovan*, 447 Pa. 450, 291 A. 2d 116 (1972) ; *Commonwealth v. Jacobs*, 445 Pa. 364, 284 A. 2d 717 (1971) ; *Commonwealth v. Bittner*, 441 Pa. 216, 272 A. 2d 484 (1971)), we have enunciated an exception to that rule when, as here, the issue is one of public policy. *Commonwealth v. Dessus*, 423 Pa. 177, 187, 224 A. 2d 188, 193 (1966) ; *Muse-Art Corp. v. Philadelphia*, 373 Pa. 329, 95 A. 2d 542 (1953) ; *Schline v. Kine*, 301 Pa. 586, 152 A. 845 (1930).

the Superior Court, which certified the appeal to us because of the pendency of the Page appeal.[6]

It is important, though not critical for the purpose of passing upon these appeals, that Dr. King and Barry Page were prosecuted under separate sections of the act. Page was prosecuted under Section 718, the anti-abortion statute which proscribes the procurement of a pregnant woman's miscarriage by any means with "unlawful"[7] intent. Dr. King was charged with a violation of Section 719 which punishes the procurement of a miscarriage causing the death of the pregnant woman or the "child" with which she is "quick." Our scrutiny of Sections 718 and 719 of the act does not permit a material despecification of these sections from the Texas anti-abortion statutes which were struck down by the United States Supreme Court in *Roe v. Wade,* 410 U.S. 113 (1973).[8] Because we deem the difference

---

[6] Approximately four and one-half months after the disposition of Dr. King's post-trial motions, the Allegheny County Court of Common Pleas, Civil Division, declared Section 718, the anti-abortion statute, unconstitutionally vague and violative of due process. *Berman v. Duggan,* 119 P.L.J. 226 (1971). *Berman* was not appealed to this Court.

[7] Although appellee Page argues that Section 718 suffers from unconstitutional vagueness because of the unqualified use of "unlawful," we reach our decision here on other grounds according with the recent United States Supreme Court decision in *Roe v. Wade,* 410 U.S. 113 (1973). *See, also, Doe v. Bolten,* 410 U.S. 179 (1973). We need not consider the "vagueness" argument.

[8] The Texas statutes considered and invalidated by the Supreme Court in *Roe v. Wade,* which resemble Sections 718 and 719 of our anti-abortion act, are articles 1191 and 1194 of the Texas State Penal Code:

"Article 1191. Abortion.

"If any person shall designedly administer to a pregnant woman or knowingly procure to be administered with her consent any drug or medicine, or shall use towards her any violence or means whatever externally or internally applied, and thereby procure an abortion, he shall be confined in the penitentiary not less than two nor

between the Texas and Pennsylvania statutes inappreciable in the application of *Roe v. Wade,* we hold that Sections 718 and 719 are unconstitutional as violative of the Due Process Clause of the Fourteenth Amendment because these provisions fail to comport with the permissible scope of state regulation of abortion.[9]

Because Sections 718 and 719 are unconstitutional the prosecutions of Page and King, commenced under the provisions of these statutes, cannot sustain the convictions thus obtained.[10]

more than five years; if it be done without her consent, the punishment shall be doubled. By 'abortion' is meant that the life of the fetus or embryo shall be destroyed in the woman's womb or that a premature birth thereof be caused.

. . . .

"Article 1194. Murder in producing abortion.

"If the death of the mother is occasioned by an abortion so produced or by an attempt to effect the same it is murder."

That the Supreme Court considered the Texas statutes and our anti-abortion provisions "similar", for purposes of the application of the decision in *Roe v. Wade,* is evidenced by the inclusion of a citation to Sections 718 and 719 of our act in Mr. Justice BLACKMUN's footnote to his textual statement that "[s]imilar statutes are in existence in a majority of the States.²" 410 U.S. at 118.

[9] The permissible regulatory role of the States is carefully delineated by Mr. Justice BLACKMUN:

"(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to the medical judgment of the pregnant woman's attending physician.

"(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

"(c) For the stage subsequent to viability the State, in promoting its interest in the potentiality of human life, may, if it chooses, regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother." 410 U.S. at 164.

[10] It is important to note that the Supreme Court, speaking through Mr. Justice BLACKMUN, in delineating the permissible scope of state regulation of abortion in *Roe v. Wade,* allowed that the

The order of the Centre County Court of Common Pleas is affirmed and the judgment of sentence of the Allegheny County Court of Common Pleas is reversed.

Mr. Justice MANDERINO concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I concur in the result because under my Oath of Office I am compelled to accept the decision of the Supreme Court of the United States in *Roe v. Wade*, 410 U.S. 113 (1973), as to the constitutionality of abortion statutes. However, this should not be taken to mean that I agree with either the wisdom or the logic of the decision in *Roe*.

Mr. Chief Justice JONES and Mr. Justice O'BRIEN, join in this concurring opinion.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent and, in doing so, I am reminded of Mr. Justice BLACKMUN'S recent observation in *United States v. Tucker*, 404 U.S. 443, 449-50, 92 S. Ct. 589, 593 (1972) (dissenting opinion): "The Court's opinion, of course, is a fine and acceptable exposition of abstract law. If I felt that it fit [this] case, I would join it. The Court, however, fails . . . to give effect to certain facts that, for me, are controlling." Here, the majority's discussion of the constitutionality of the anti-abortion statutes* is an "acceptable exposition of abstract law." However, the majority fails to give effect to the con-

---

State could "proscribe any abortion by a person who is not a physician [as 'physician' is defined by the State]." 410 U.S. at 165. We do not hold here that the Commonwealth could not have proceeded against Barry Page for the lay practice of gynecology and obstetrics had it chosen to proceed under the Medical Practice Act, Act of June 3, 1911, P. L. 639, §2, *as amended*, 63 P.S. §401a.

* Act of June 24, 1939, P. L. 872, §§718, 719, 18 P.S. §§4718, 4719 (1963).

trolling fact that appellant, Benjamin King, did not challenge the constitutionality of the statute either at trial or before the court en banc, but, rather, asserts the issue, for the first time, on direct appeal. We have repeatedly held that this Court will not consider issues which were neither raised nor considered in the trial court. See, e.g., *Commonwealth v. Agie,* 449 Pa. 187, 296 A. 2d 741 (1972); *Commonwealth v. Donovan,* 447 Pa. 450, 291 A. 2d 116 (1972); *Commonwealth v. Jacobs,* 445 Pa. 364, 284 A. 2d 717 (1971); *Commonwealth v. Bittner,* 441 Pa. 216, 272 A. 2d 484 (1971); *Heppe Estate,* 440 Pa. 328, 269 A. 2d 687 (1970); *Wenzel v. Morris Dist. Co., Inc.,* 439 Pa. 364, 266 A. 2d 662 (1970); *Commonwealth v. Payton,* 431 Pa. 105, 244 A. 2d 644 (1968); *Brunswick Corp. v. Key Enterprises, Inc.,* 431 Pa. 15, 244 A. 2d 658 (1968); *Commonwealth ex rel. Banks v. Myers,* 423 Pa. 124, 222 A. 2d 880 (1966); *Bechler v. Oliva,* 400 Pa. 299, 161 A. 2d 156 (1960).

Recently, we unanimously said: "The appellant, who was represented by counsel throughout all the proceedings below, did not raise either of these issues at trial or in his post-trial motions. We have consistently held that issues not raised in the court below are waived and cannot be raised for the first time on appeal to this Court." *Commonwealth v. Agie,* supra at 189, 296 A. 2d at 741.

Similarly, the majority fails to give effect to the fact that appellee, Barry Page, is not, on this record, eligible for relief under the Post Conviction Hearing Act [PCHA], Act of January 25, 1966, P. L. (1965) 1580, §§1 et seq., 19 P.S. §§1180-1 et seq. (Supp. 1972). On October 21, 1968, Page pleaded guilty to performing two abortions and was, subsequently, sentenced to two to five years imprisonment. Appellee, however, did not appeal from that judgment of sentence. Rather, on

March 4, 1970, he filed a PCHA petition alleging that the anti-abortion statute is unconstitutional.

In my view, we need not reach the merits of that issue—as does the majority—for Page has waived the right to litigate this claim by failing to take a direct appeal. Section 3 of the PCHA mandates that "[t]o be eligible for relief under this act, a person must . . . prove . . . [t]hat the error resulting in his conviction and sentence has not been . . . waived." Act of January 25, 1966, P. L. (1965) 1580, §3, 19 P.S. §1180-3 (Supp. 1972). The act further provides that an issue is waived if:

"(1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this act; and

"(2) The petitioner is unable to prove the existence of extraordinary circumstances to justify his failure to raise the issue.

"(c) There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure." Act of January 25, 1966, P. L. (1965) 1580, §4, 19 P.S. §1180-4 (Supp. 1972).

Here, Page failed to appeal from the judgment of sentence. He has not asserted any "extraordinary circumstances to justify his failure to raise the issue" on direct appeal. Moreover, no evidence has been offered to rebut the "presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure." Confronted with similar facts in *Commonwealth v. Parker*, 449 Pa. 282, 285, 296 A. 2d 744, 745-46 (1972), we said, "Under such circumstances, the instant collateral attack on his conviction and sentence is foreclosed."

I dissent.

340

DISSENTING OPINION BY MR. JUSTICE NIX:

I agree with Justice ROBERTS' conclusion in his dissenting opinion that neither of the appeals before us properly raised the constitutional issue. I only add that it has long been the rule of this Court that we will not attempt to resolve constitutional issues unless the specific issue is before the court and the resolution of the issue is absolutely necessary to the decision of the case. *Binder v. Triangle Publications, Inc.*, 442 Pa. 319, 275 A. 2d 53 (1971); *Misitis v. Steel City Piping*, 441 Pa. 339, 272 A. 2d 883 (1971); *Shuman v. Bernie's Drug Concessions*, 409 Pa. 539, 187 A. 2d 660 (1963).