## Lansinger Estate

*Paul J. Donnelly* and *Alfred Marroletti,* for accountants.

*B. Jerome Shane,* for legatees.

GUTOWICZ, *J.,* June 3, 1976—This decedent died November 30, 1971, leaving a will dated December 15, 1970, which was duly probated. She was unmarried at the time of her death and left no issue. . . .

Testatrix left a holographic will which gave rise to numerous questions regarding the identity of legatees and the amounts of certain legacies, which are hereinafter discussed at length. Zona Brown, Helena Jackson and Vera Boehme, sisters of testatrix, were appointed executrices. . . .

Several questions require adjudication. The statement of proposed distribution sets forth questions regarding the identities of certain legatees and the amount of the legacy to which each is entitled. At a subsequent hearing, additional questions were raised concerning the apportionment of counsel fees and executors' commissions.

Testatrix, by holographic writing, bequeathed the sums of $1,000 each to Michele Vaz, Chris Jackson, Velma Morris, and Glorie Vaz and, on the reverse side, bequeathed $1,000 each to Velma, Glorie, Chris and Michele. Accountants take the position that the persons named on the front and on the reverse side of the paper are the same persons. The testimony of Zona Brown, wherein she identifies the aforenamed as daughters of a brother, and that of Dorothy Slocum [another of decedent's sisters] that no one else in the family bears these names, supports this position and, accordingly, the court finds the same to be correct.

More difficult is the question whether testatrix intended that the aforenamed legatees receive $1,000 or $2,000 each. The rule is that where pecuniary legacies of the same or similar sum are given by two different instruments to the same person, the presumption is that they are intended to be cumulative, unless a contrary intent is manifest on the face of the separate instruments: Heppe Estate, 440 Pa. 328, 269 A. 2d 687 (1970). It must, therefore, be determined whether the writ-

ing on each side of the paper constitutes a separate testamentary writing. The front of the paper is signed at the bottom by testatrix and witnessed by two persons, whereas the reverse side is signed only by testatrix, indicating that the two sides are separate instruments prepared at different times. Because neither witness is available, an important source of evidence is lost. Further support for the position that the two sides constitute separate instruments derives from the fact that testatrix did not reiterate all of the legacies given on the front when the reverse side was prepared. It is also significant that, whereas testatrix identified the legatees by a first and last name on the front, she used only a first name in identifying the same persons on the reverse side. Evidence to the contrary, such as the fact that only the front is dated or that only the reverse side contains a residuary clause or names executors, is not conclusive. Nor is the testimony of Zona Brown, wherein the witness stated that testatrix did not know the legatees but then testified that testatrix had travelled to Latin America and that the witness did not, in fact, know whether testatrix had met or corresponded with the legatees, who were living there. Others opposing an interpretation that a double legacy was intended are Gertrude Felton and Helena Jackson but neither appeared in person or by counsel. The court, relying on intrinsic evidence presented by the writing itself, finds testatrix intended each of the aforenamed legatees to receive a total bequest of $2,000.

A third question concerns the lineation or obliteration of a provision relating to the devise of premises 2208 Pine Street. The testimony of Dorothy Slocum indicates that the will remained

in the possession of testatrix until the night before her death and that the lineation was present on the document when control was transferred to Mrs. Slocum. It is clear that a devise or bequest may be revoked by a testatrix by drawing a line through such devise or bequest: Okowitz Will, 403 Pa. 82, 169 A. 2d 84 (1961). There is a presumption that alterations or changes made in a will in the handwriting of a testator were made prior to the execution of the will: Molden Will, 387 Pa. 484, 128 A. 2d 568 (1957). The fact that the will remained in the possession of testatrix until shortly before her death gives rise to a further presumption that the acts of obliteration and cancellation were performed by her. See Hoppes Estate (No. 2), 58 Schuyl. 130 (1961). It is perhaps most significant that the copy fair omits the lineated provision and that, nevertheless, no appeal from the register of wills was taken despite the lapse of four years since probate. In Hoppes Estate, supra, it was held that the failure to appeal from the decree within the statutory period rendered the probate conclusive. The court, therefore, finds that testatrix lineated the provision prior to execution with the intention to revoke the same.

Another question before the court concerns the division of compensation among the co-executrices. It is the contention of Zona Brown that she performed all of the duties of an executrix and that her co-executrices, Helena Jackson and Vera Boehme, did nothing, having moved to Florida, and should be paid no commissions. In question is a lump sum commission of $8,666.47 allowed in the joint account. The court is requested to determine the share of each executrix. Under the Orphans' Court Act of 1951, section

301(6), the Orphans' Court was given exclusive jurisdiction of allowance to and allocation of compensation among fiduciaries. It is well settled that an executor claiming more commissions than his share has the burden of proving his right: Weller v. Bell, 36 Luz. 225 (1940). There is a presumption that each executor, where more than one is appointed, will receive an equal share of the gross commissions. Since the responsibility is joint, each must be held accountable for administering all of the estate for that divided compensation. If one is derelict in his duty, the other may not acquiesce and then claim not only his own compensation but that of his offending co-executor as well. Where no steps are taken in the Orphans' Court to correct the alleged failure of his co-executor, it must be concluded that the other co-executor did so acquiesce: Weller v. Bell, supra. The testimony indicates that Zona Brown willingly assumed the lion's share of the work, that she chose to act as her own broker in securing a purchaser of the real estate despite requests that she retain outside professional assistance, and that she acted in accordance with powers of attorney given her by her co-executrices. Moreover, it is not so that the other co-executrices performed none of the duties. They were petitioners for the probate of the will and the grant of letters testamentary and they signed the inventory and the account, although it is not certain to what extent they participated in the administration. Nevertheless, the fact is that the law imposed upon Zona Brown the whole duty and, even assuming that she did all that she avers, she did no more than comply with the law and has earned her full distributive one-third share of the commission. The court, therefore, directs that the executors'

commission be divided equally among Zona Brown, Helena Jackson, and Vera Boehme.

A further question for the court's consideration arises from the objections of Dorothy Slocum and Zona Brown to the counsel fee of Alfred Marroletti. Testimony in this regard was proffered by Zona Brown who stated, in effect, that she primarily performed her duties in conjunction with Paul J. Donnelly, Esq., and that Mr. Marroletti was not entitled to an equal fee. It is significant that Mr. Donnelly does not claim that he shouldered a disproportionate burden. Moreover, her testimony reveals that she did not, in fact, know the amount or nature of the work performed by Mr. Marroletti. The only suggestion of dereliction is the alleged failure of that attorney to return certain telephone calls, an allegation effectively rebutted by the testimony of Anthony Alzamora, the son of Vera Boehme. Both counsel have presented affidavits of services performed which indicate substantial time and effort devoted to the administration of the estate. On the basis of the evidence before it, the court finds the respective counsel fees of Mr. Donnelly and Mr. Marroletti to be proper, fair and reasonable under the circumstances.

Remaining issues concern the claim of Helena Jackson in the amount of $249 for repairs to the Pine Street premises and the claim of Vera Boehme to a bracelet containing Costa Rican coins, which bracelet she avers belongs to her. The sole evidence in support of these claims is an affidavit signed by Helene Jackson and Vera Boehme. Neither claim is admitted. An objection to the claim of $249 was raised by Zona Brown. The aforesaid affidavit is not competent evidence and does not suffice as proof of either claim. There

being no testimony or other evidence regarding the claim for repairs, the same is denied. Similarly, as the result of the exclusion of the testimony of Anthony A. Alzamora regarding the bracelet by the court, there is a failure of proof as to Vera Boehme's ownership of the bracelet.

And now, June 3, 1976, the account is confirmed nisi.