341 A.2d 907

COMMONWEALTH of Pennsylvania

v.

ABU–IBN HANIFAH BEY, a/k/a
Nathaniel Miller, Appellant.

Supreme Court of Pennsylvania.

Submitted Nov. 11, 1974.

Decided May 21, 1975.

Rehearing Denied Aug. 11, 1975.

534

Joshua M. Briskin, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Jr., Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant, Abu Ibn Hanifah Bey, also known as Nathaniel Miller, was convicted before a judge and jury of murder in the second degree, burglary, and aggravated robbery stemming from a robbery and shooting incident at a bar in Philadelphia. Following the denial of post-trial motions, appellant was sentenced to a term of imprisonment of 7½ to 15 years on the murder bill, and to a consecutive 4 to 8 year term on the robbery bill. Sentence was suspended on the burglary bill. This direct appeal followed.[1]

The two grounds which appellant raises in support of his request for a new trial relate to the admission into evidence of his confession. First he contends that his confession should have been suppressed because it was the product of an illegal arrest. Second he claims that the confession should have been suppressed as the product of an unnecessary delay between arrest and arraignment in violation of Rule 118 (now Rule 130) of the Pennsylvania Rules of Criminal Procedure. *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). Be-

1. Jurisdiction in this Court for the appeal from the murder conviction exists pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.-202(1) (Supp.1974). Appeals from the other convictions have been transferred from the Superior Court. See *Commonwealth v. Williams*, 455 Pa. 569, n. 2, 319 A.2d 419, n. 2 (1974).

cause we agree with this latter contention, we need not discuss the legality of the arrest.

On May 5, 1972, appellant, in the company of four brothers named Shaw, was arrested at the Shaw home and taken to the Police Administration Building in connection with a robbery and shooting at a bar not far from their residence. At 5:10 P.M. appellant was placed alone in an interrogation room. Twenty minutes later a detective entered and, after warning appellant of his Miranda rights, proceeded to question him. Appellant was questioned at various intervals thereafter by this detective and, although appellant did not refuse to speak with the police, he steadfastly denied any knowledge of, or involvement in, the incident. At 10:12 P.M. appellant was confronted with a statement by one of the Shaw brothers implicating appellant. Thereupon appellant admitted participating in the robbery. Appellant was permitted to rest and during this period attempted to telephone relatives. He was also questioned concerning the identity of a third participant. At 4:30 A.M. the following morning, appellant made a formal statement which was signed at 6:27 A.M. Appellant was slated at 10:46 A.M. The record is unclear as to the time of arraignment, but it was sometime after 10:46 A.M.

■ In a number of opinions since *Commonwealth v. Futch, supra,* this Court has set forth the rule that where evidence prejudicial to the accused is obtained during an unnecessary delay between arrest and preliminary arraignment and that evidence is reasonably related to that delay, then the evidence is to be suppressed. See *Commonwealth v. Williams,* 455 Pa. 569, 572, 319 A.2d 419 (1974) and cases cited therein.

■ The Commonwealth, while not contesting that the evidence obtained was prejudicial, argues that the delay was not "unnecessary" because only five hours elapsed between the arrest and appellant's first oral ad-

mission. The Commonwealth correctly concedes however that there is no arbitrarily prescribed length of time which constitutes an "unnecessary delay". See *Commonwealth v. Barilak*, 460 Pa. 449, 333 A.2d 859 (1975) (5¼ hour delay); *Commonwealth v. Johnson*, 458 Pa. 425, 327 A.2d 618 (1974) (4 hour delay). Moreover, the Commonwealth offers no reason for the five hour delay other than the officer's desire to question appellant for "preliminary investigation." Although this excuse might have had some validity had appellant indicated a willingness to provide information concerning the incident, see *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974) [2], here the investigating officer testified at the suppression hearing that appellant claimed he knew nothing of the incident. Furthermore, the delay was not used for administrative procedures. Under these circumstances we conclude that "the Commonwealth delayed the arraignment . . . with the specific intention of obtaining [a] confession. Rule 118 . . . was fashioned to prevent such procedure. See *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973)." *Commonwealth v. Johnson, supra*, 458 Pa. at 428, 327 A. 2d at 619.

█ The Commonwealth also argues that because appellant confessed upon learning that another individual had implicated him, the confession was not reasonably related to the delay, citing *Commonwealth v. Fogan*, 449

2. In *Cherry* this Court stated:
"While it may be permissible to delay the arraignment of an arrested individual if he initially indicates a willingness to cooperate, in order to obtain information from him about co-suspects or other evidence so that such co-suspects or evidence might be speedily located while still in the vicinity, no such grounds can be claimed in the instant case. Appellant was originally unwilling to say more than that he had been present at the scene of the crime. His confession did not come until after the fourteen-hour delay and was, in fact, produced by that delay. Accordingly, his confession should have been suppressed." *Commonwealth v. Cherry, supra* at 205, 321 A.2d at 613.

Pa. 552, 296 A.2d 755 (1972). This argument was specifically rejected by this Court recently in *Commonwealth v. Doamaral*, 461 Pa. 517, 337 A.2d 273 (filed April 21, 1975). There this Court stated:

"*Fogan* is inapposite here; the *Futch* issue was not raised or considered in *Fogan*. . . .

. . . [I]t is true that appellant denied involvement in the incident until informed of the witness' accusation, however, the fact that the accusation may have combined with the unnecessary delay to induce appellant's confession does not mean that the confession is admissable [sic]. We did not say in *Futch* that the unnecessary delay must be the sole cause of the confession for the confession to be inadmissible. We said that all evidence obtained during an unnecessary delay, except that which has no reasonable relationship to the delay whatsoever, should be excluded. It cannot be said that the confession in the instant appeal had no relationship whatsoever to the twelve hour delay. The fact that the confession may have also been related to other events which occurred during the delay does not eliminate its relationship with the delay. *Compare Commonwealth v. Whitson*, 461 Pa. 101, 334 A.2d 653 (1974, filed March 18, 1975) (absence of unnecessary delay); *Commonwealth v. Dreuitt*, 457 Pa. 345, 321 A.2d 614 (1974) (no unnecessary delay prior to event causing confession). ·

In *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974), we held inadmissible on *Futch* grounds a confession made fourteen hours after arrest and immediately following confrontation with results of a polygraph test which appellant had 'failed.' In *Cherry* we said:

'Since appellant was originally unwilling to admit his complicity in the crime, and did not do so until after he was told that he had failed the polygraph

test, some twelve hours later, during which time he had been subjected to over six hours of questioning and a lengthy period of isolation, we are convinced that appellant would not have changed his mind were it not for the events which transpired during the delay.' *Id.* at 204, 321 A.2d at 612.

> Although the facts in this case are not identical to those in *Cherry*, the inculpatory statements here, like those in *Cherry*, were made during a period of unnecessary delay. Under these circumstances, we conclude that the inculpatory statements were reasonably related to the "unnecessary delay." Id. at 523, 337 A.2d at 276.

See also *Commonwealth v. Barilak, supra,* where appellant confessed after 5¼ hours upon being informed that blood in her car matched that of the victim. Nevertheless, this Court concluded that the "more than five hour period constituted 'an unreasonable delay' within the meaning of Rule 118, and the incriminating statements made thereafter were reasonably related thereto." *Id.* at 452, 333 A.2d at 861. Accordingly, we hold that appellant's statements should have been suppressed.

Judgment reversed and a new trial is ordered.

EAGEN, J., files a dissenting opinion in which JONES, C. J., joins.

O'BRIEN, J., concurs in the result.

POMEROY, J., files a dissenting opinion in which JONES, C. J., joins.

EAGEN, Justice (dissenting).

In the early afternoon of May 5, 1972, three men in their twenties held up a public bar in Philadelphia and shot and killed one of the patrons. Police investigation pointed to the appellant as one of the felons, and he was

taken into custody before 5:00 that same afternoon. Others suspected of also having participated in the robbery were taken into custody at the same time and place.

When the group arrived at police headquarters, they were immediately told the reason for their arrests and of their constitutional rights including the right to remain silent. The appellant indicated he was aware of his rights, but was willing to answer questions notwithstanding. Between 5:30 p. m. and 10:00 p. m., the appellant was questioned by an investigating police detective about the robbery and killing, but he steadfastly denied any involvement in, or knowledge of, the crimes. The questioning was not continuous, but intermittent, totaling altogether about two hours.

In the meantime, the others who were taken into custody with the appellant were questioned in other rooms by other police officers. One of those questioned, an Andrew Shaw, admitted he had participated in the robbery and that he had done the shooting. He also named the others who were with him at the time and assisted in committing the robbery. The appellant was one of those named. When the appellant was told of Shaw's implicating statement, he immediately changed his story and admitted having participated in the robbery. This occurred at 10:12 p. m. Thereafter, appellant rested and attempted to contact relatives by phone. Beginning about 4:30 a. m. the following morning, he repeated his admission of guilt, giving greater detail. This statement was recorded on a typewriter. At trial, evidence of appellant's recorded statement and of his initial incriminating admissions were introduced into evidence against him. The jury found appellant guilty of murder in the second degree and other related crimes. A majority of this Court now reverse these convictions, and order a new trial. The majority say the police violated Rule 118 [now 130] of the Pennsylvania Rules of Criminal Procedure by detaining and questioning the appellant from

5:30 p. m. until 10:12 p. m. without having him arraigned before a committing judicial officer and, since the incriminations were the product of that detention, evidentiary use thereof was reversible error. I cannot in good conscience be any part of such a ruling. I believe courts should studiously protect those accused of crime from overzealous and unfair police tactics. However, effective law enforcement requires that the police be allowed some reasonable period to ferret out the truth by questioning those who appear to be involved. Law abiding citizens have rights too, and the police should not be unreasonably shackled in the protection of these rights.

Please keep in mind appellant's self-incriminations were not the result of any coercive tactics or circumstances. This is not even suggested. The one and only reason why these incriminations are ruled to be tainted and, hence, inadmissible is that the police detained and questioned the appellant for four hours and forty-two minutes without having him arraigned before a judicial officer.[1] The complete unreasonableness of this position is self-evident.

But even assuming there was an "unnecessary delay" within the meaning of Rule 118, in order for use of this evidence to be proscribed at trial, it must have been the product of the "unnecessary delay" and the burden of establishing this nexus was upon the appellant. *Commonwealth v. Goodwin*, 460 Pa. 516, 333 A.2d 892 (1975). Not only was this "nexus" not established instantly, but the record irrefutably proves the contrary. The appellant did not come around to telling the truth because he was detained without arraignment for four hours and forty-two minutes. He did so because his co-defendant Shaw had let the "cat out of the bag". The majority

---

1. The fact that the arraignment of the appellant did not occur for several hours after he incriminated himself is not relevant in determining if a violation of Rule 118 occurred. See *Commonwealth v. Rowe,* 459 Pa. 163, 327 A.2d 358 (1974). The crucial period is the time period between the arrest and the initial incrimination.

may cavalierly dismiss the significance here, of our decision in *Commonwealth v. Fogan*, 449 Pa. 552, 296 A.2d 755 (1972), but *Fogan* clearly rules this case. Saying *Fogan* is inapposite because the Futch issue was not there involved is to effectively remove the requirement that there be proof of a "nexus" between the incrimination and the "unnecessary delay".

I dissent.

JONES, C. J., joins in this dissent.

POMEROY, Justice (dissenting).

I am unable to conclude that the approximately five hours between appellant's arrest and the giving of his oral inculpatory statement constituted a period of "unnecessary delay." * According to the police chronology, less than half that period was spent in actual interrogation of the defendant. During the remainder of the time, he was permitted to eat, rest and use the bathroom. Under these circumstances, and absent a rule that *any* time spent for the purposes of interrogation is "unnecessary", I am of the opinion that the period of time which elapsed prior to defendant's oral confession did not constitute a period of "unnecessary delay."

If, however, the contrary be assumed *arguendo*, I do not believe that the confession Bey gave the police can be said to be reasonably related to any delay. It is my opinion that the rationale of this Court in *Commonwealth v. Fogan*, 449 Pa. 552, 296 A.2d 755 (1972) is as applicable in the instant case as it is in cases involving illegal arrests. *See* the dissenting opinion of Mr. Justice Eagen, joined by Mr. Chief Justice Jones and this writer, in *Commonwealth v. Doamaral*, 461 Pa. 517, 337 A.2d

---

* For the purpose of determining whether there has been a violation of our exclusionary rule announced in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), this is the only relevant time that need be considered. *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974).

273 (1975). It was being confronted with a statement by a co-defendant which implicated Bey in the killing that prompted Bey himself to confess. The fact that this happened to take place five hours after arrest rather than, say, three hours afterwards is of no significance; the motivation was the fact that Bey's companion had "fingered" him. Thus Bey's confession was not, in my view, the product of any delay in arraignment.

For the aforementioned reasons, I dissent.

JONES, C. J., joins in this opinion.