346 A.2d 48

COMMONWEALTH of Pennsylvania

v.

Christopher Columbus MITCHELL, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 13, 1975.

Decided Oct. 3, 1975.

118

---

Ronald W. Morrison, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., A. J. Gafni, Maxine J. Stotland, Asst. Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

Appellant, Christopher Columbus Mitchell, was indicted and charged with the murder of nineteen-year-old John Mikalonis. In a pre-trial proceeding under Pa.R. Crim.P. 323, appellant tried unsuccessfully to suppress certain statements made to the investigating officers on the ground that they were involuntary. At the conclusion of trial, before a judge and jury, appellant was found guilty of murder in the second degree. A sentence of from ten to twenty years imprisonment was imposed. This direct appeal followed.[1]

Relying upon this Court's decision in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and its progeny,[2] appellant claims that his confession should have been suppressed as the product of an unnecessary delay between arrest and arraignment in violation of Pa.R.Crim.P. 118 (now 130).

1. Jurisdiction in this Court for the appeal from a murder conviction exists pursuant to the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974–1975).

2. See, e. g., *Commonwealth v. Abu Ibn Hanifah Bey*, 462 Pa. 533, 341 A.2d 907 (1975); *Commonwealth v. Doamaral*, 461 Pa. 517, 337 A.2d 273 (1975); *Commonwealth v. Cullison*, 461 Pa. 301, 336 A.2d 296 (1975); *Commonwealth v. Barilak*, 460 Pa. 449, 333 A.2d 859 (1975); *Commonwealth v. Sanders*, 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Johnson*, 459 Pa. 171, 327 A.2d 618 (1974); *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dutton*, 453 Pa. 547, 307 A.2d 238 (1973); *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973); see *Geiger Appeal*, 454 Pa. 51, 309 A.2d 559 (1973); *Commonwealth v. Peters*, 453 Pa. 615, 306 A.2d 901 (1973).

## I.

Initially, the Commonwealth requests that we reconsider our decisions [3] in which we have held the exclusionary rule as announced in *Commonwealth v. Futch, supra* to be applicable to all arrests subsequent to the date of adoption of the procedural rule requiring prompt arraignment after arrest.[4] The Commonwealth argues that in applying the *Futch* exclusionary rule in this manner, we are giving the procedural rule retroactive application.[5] We do not accept this view. Retroactivity occurs where the new decision overrules stated past precedent or disrupts a long accepted practice and is permitted to affect matters which preceded its announcement. In the instant situation the rules of criminal procedure, at the time of the arrest in question, expressly set forth the required standard of conduct. That standard was in no way altered by our decision in *Commonwealth v. Futch, supra*. Rather, the *Futch* decision merely explained the consequences that would follow a violation of the prescribed conduct.

**3.** See *Commonwealth v. Dutton, supra*; See also, *Commonwealth v. Cullison, supra*; *Commonwealth v. Doamaral, supra*; *Commonwealth v. Wilson,* 458 Pa. 285, 327 A.2d 621 (1974); *Commonwealth v. Johnson, supra*; *Commonwealth v. Terry,* 457 Pa. 185, 321 A.2d 654 (1974); *Commonwealth v. Cherry, supra*; *Commonwealth v. Dixon, supra*; *Commonwealth v. Tingle, supra*.

**4.** Pa.R.Crim.P. 130, formerly Rule 118 (in part), 19 P.S. Appendix adopted June 30, 1964; effective January 1, 1965, suspended effective May 1, 1970; revised and renumbered as Rule 118 (in part) January 31, 1970, effective May 1, 1970; revised and renumbered as Rule 130, September 18, 1973, effective January 1, 1974. See also, Pa.R.Crim.P. 122, 19 P.S. Appendix. Formerly Rule 116 (in part), adopted June 30, 1964, effective January 1, 1965; suspended effective May 1, 1970; revised January 31, 1970, effective May 1, 1970; revised and renumbered as Rule 122, September 18, 1973, effective January 1, 1974.

**5.** This appellant was voluntarily surrendered by his attorney on April 25, 1971 at which time Rule 118 was in effect but prior to our decision in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972) (Decided April 20, 1972).

Further, we reject the Commonwealth's contention that our ruling places an unreasonable burden on law enforcement officials. Having knowingly acted in violation of this Court's procedural mandate, police officials subjected themselves to whatever sanction we deemed appropriate for such a violation. The mere fact that the penalty for violation of the rule was not expressly set forth at the time the infraction occurred does not provide a justification for a prospective application of the sanction. When law enforcement officials deliberately violate our mandates they act at their peril and should not be heard later to complain as to the severity of the penalty for such a violation.

"When we make rules for criminal proceedings we do so in order to protect the rights of the individual and therefore we expect strict compliance with those rules. However, a prophylactic exclusionary rule is applied only in extreme cases where all other attempts to secure compliance have proven unsuccessful. See generally *Mapp v. Ohio*, 367 U.S. 643, 651–652, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)." *Commonwealth v. Williams*, 454 Pa. 368, 372, 312 A.2d 597, 600 (1973).

deter further continued flagrant disregard of this man- The repeated violations of Pa.R.Crim.P. 130 fully justify the imposition of a doctrine of exclusion as a means to date.

## II.

The question whether the issue has been properly preserved for appellate review, i. e., whether there has been a waiver of this issue, presents a more difficult problem. While the procedural rule, which requires prompt arraignment without an unnecessary delay following an arrest, was in effect at the time of appellant's arrest, he has for the first time in this appeal cited this violation specifically as a basis for relief. Although appellant challenged the voluntariness of his confession throughout

the various stages of the proceedings in the court below, he at no time raised his present contention that the statement was a product of an unnecessary delay in violation of this Court's rule of criminal procedure.

We first considered the waiver problem as it relates to the doctrine of exclusion as announced in *Commonwealth v. Futch, supra,* in a footnote in *Commonwealth v. Wayman,* 454 Pa. 79, 82, n. 1, 309 A.2d 784, 786, n. 1 (1973). Therein, we reasoned:

> "Although appellant did not raise this specific argument in his pre-trial (1967) motion to suppress (which was based on purported violations of the standards set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964)), the Commonwealth has not objected to it being raised here, and we should not raise an objection sua sponte. *Commonwealth v. Page & King,* 451 Pa. 331, 334 n. 3, 303 A.2d 215, 216 n. 2a (1973). Indeed, had such an objection been voiced by the Commonwealth, it would have been without merit.

> As *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972) (deciding for the first time in this Commonwealth that all evidence obtained during an 'unnecessary delay' between arrest and arraignment, except, that evidence unrelated to the delay, is inadmissible), was not decided until five years *after* appellant's trial, appellant cannot be held to have waived the right to litigate that claim. As this Court made clear in *Commonwealth v. Simon,* 446 Pa. 215, 218, 285 A.2d 861, 862 (1971) (quoting from *Commonwealth v. Cheeks,* 429 Pa. 89, 239 A.2d 793 (1968)): "[I]t would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney had any way of knowing that there existed a right to be waived." Id. at 95, 239 A.2d at 796. *Cheeks* and its progeny

. . . established the rule that failure to raise an issue in a prior proceeding is not a waiver when the *legal principles* upon which the issue is premised are *newly announced* in an appellate decision rendered subsequent to the date of the prior proceeding.' (footnote omitted). See also *Commonwealth v. Jefferson,* 423 Pa. 541, 546, 226 A.2d 765, 768 (1967).

Moreover, appellant's present contention is properly before this Court for the additional reason that the 'ground' for relief presented here is the identical one presented to the hearing court in appellant's pre-trial motion to suppress—the invalidity of the confession. Merely because appellant 'advances a *new or different theory* as a basis for' relief, the ground or issue remains precisely the same. *Commonwealth v. Slavik,* 449 Pa. 424, 430, 297 A.2d 920, 923 (1972). Appellant here does not advance a new 'ground,' he merely raises an argument legally different from that raised below. As this Court held in *Slavik,* supra (quoting from *Sanders v. United States,* 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963)), ' "*identical grounds may often be supported by different legal arguments,* . . .*"* ' the 'ground' appellant advances here, the invalidity of the confession, having been preserved below, is accordingly properly before this Court." Id.

*Commonwealth v. Wayman, supra* has subsequently been followed in *Commonwealth v. Hancock,* 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Sanders,* 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Showalter,* 458 Pa. 659, 328 A.2d 841 (1974); *Commonwealth v. Doamaral,* 461 Pa. 517, 337 A.2d 273 (1975).

Since our decision in *Commonwealth v. Wayman, supra,* we have had occasion to re-evaluate the necessity of requiring strict application of the rules of waiver. See *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Reid,* 458 Pa. 357, 326 A.2d 267 (1974); *Dilliplaine v. Lehigh Valley Trust Co.,* 457

Pa. 255, 322 A.2d 114 (1974); see also, *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975). Appellate Courts render a disservice to judicial economy and the efficient operation of our court system where they freely accept issues that could have and should have been first presented to the courts below for their consideration. *Commonwealth v. Reid, supra* (and cases cited therein). Such procedures encourage the reversal of many trials for errors which could have been, in all probability, avoided or cured if they had been promptly called to the attention of the lower court.

Additionally, such a procedure not only deprives the reviewing court of the benefit of the reasoning of the lower court on the issues at hand but in many cases requires a decision of an issue on less than a complete record. Where parties below were not aware that a particular issue was being raised, it was quite likely that testimony germane to that issue would be overlooked or believed to be unnecessary and consequently not presented. This is particularly true in this instance where the facts crucial to rebut a charge of involuntariness may or may not be helpful in determining the reasonableness of a delay or the nexus of the delay to the evidence obtained during the course of it.

In *Commonwealth v. Clair, supra,* we discussed at length the considerations that led to the conclusion that assignments of error must be properly preserved below.

"Most recently this Court has expressly abrogated the doctrine of basic and fundamental error in civil cases, *Dilliplaine v. Lehigh Valley Trust Company,* [457 Pa. 255], 322 A.2d 114 (filed June, 1974). There the Court reasoned that the doctrine (1) 'removes the professional necessity for (diligent preparation)', (2) penalizes the opposing party, (3) denies the trial court an opportunity to correct the error, (4) erodes the finality of trial court holdings, (5) encourages unnecessary appeals and (6) needlessly discourages alert pro-

fessional representation. The requirement of a timely specific objection on the other hand insures that:

'(1) Appellate courts will not be required to expend time and energy where no trial ruling has been made. (2) The trial court may promptly correct the the trial court is more likely to reach a satisfactory asserted error. With the issue properly presented, result thus, obviating the need for appellate review on this issue. Or if a new trial is necessary, it may be granted by the trial court without subjecting both the litigants and the courts to the expense and delay inherent in appellant review. (3) Appellate courts will be free to more expeditiously dispose of the issues properly preserved for appeal. Finally, the exception requirement will remove the advantage formerly enjoyed by the unprepared trial lawyer who looked to the appellate court to compensate for his trial omissions.' 322 A.2d at 117. (footnotes omitted).

There can be no doubt that these reasons apply as well in the criminal area. Moreover, there is no reason to distinguish between civil and criminal cases in this regard in view of the fact that there are comparable rules requiring specific objection in both sets of procedural rules. Compare Rule 227(b) of the Pennsylvania Rules of Civil Procedure. 12 P.S. Appendix, with Rule 1119(b) of the Pennsylvania Rules of Criminal Procedure. Indeed, abrogating the doctrine in the criminal area may be even more compelling since any error that deprives a defendant of due process can more properly be remedied by a claim of ineffective assistance of counsel. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967)." *Id.* at 421–422, 326 A.2d at 273–275.

We are constrained to conclude that the view expressed in *Commonwealth v. Wayman, supra* is a variance with well-considered judicial policy and should be

discarded. To make a distinction turn upon the fact that one is merely advancing a new theory, creates a fiction which frustrates the very purpose sought to be accomplished by a strict application of waiver. As was aptly stated by Mr. Justice Roberts speaking for this Court in *Kimmel v. Somerset County Commissioners*, 460 Pa. 381, 333 A.2d 777 (1975):

> "It is a fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court. See *Altman v. Ryan*, 435 Pa. 401, 406–07, 257 A.2d 583, 585 (1969); *Abrams Will*, 419 Pa. 92, 98, 213 A.2d 638, 641 (1965); *Fisher v. Brick*, 358 Pa. 260, 264, 56 A.2d 213, 215 (1948); *Mayer v. Chelten Avenue Building Corp.*, 321 Pa. 193, 195, 183 A. 773 (1936)." *Id.* at 384, 333 A.2d at 779.

Further reflection also forces the conclusion that we were in error in *Commonwealth v. Wayman, supra*, when we determined that precluding an accused from raising the issue when he had not specifically raised it below would be "manifestly unfair." Defense counsel should have been aware that our rules of procedure required a prompt arraignment without an unnecessary delay. If it was ascertained that this direction had been ignored and his client prejudiced thereby, the fact that the penalty for such a violation had not been announced fails to provide an excuse for failing to raise the objection. The "manifest unfairness" would result if we were to penalize police officials for not anticipating the imposition of a sanction for such a violation and at the same time relieve the defense from the responsibility of timely raising the objection. Where a counselled accused sits idly by and fails to raise an objection to improper treatment to which he has been subjected, he will not later be heard to complain but must suffer the consequences of his silence.

We therefore hold that the objection based on the unnecessary delay between arrest and arraignment has been waived. Since appellant offers no other basis for relief the conviction below must stand.[6]

Judgment of sentence affirmed.

POMEROY, J., filed a concurring opinion joined by JONES, C. J., and EAGEN, J.

ROBERTS, J., filed a dissenting opinion joined by MANDERINO, J.

POMEROY, Justice (concurring).

I concur in the decision of the Court that the issue of unnecessary delay between arrest and arraignment has been waived in this case. In reaching this result, the Court returns to the "fundamental principle of appellate review that we will not reverse a judgment or decree on a theory that was not presented to the trial court". *Kimmel v. Somerset County Commissioners*, 460 Pa. 381, 384, 333 A.2d 777, 779 (1975), quoted in the Opinion of the Court, *ante* at 53. In so doing, the Court confesses error in having taken a wrong turn in the adoption and following of footnote one in *Commonwealth v. Wayman*, 454 Pa. 79, 82 n. 1, 309 A.2d 784, 786 n. 1 (1973), with its wholly artificial distinction between "grounds" and "theories". I applaud this development, even though a few horses were stolen before the barn door was locked.[1]

---

6. Appellant has not raised the issue of voluntariness before this Court.

1. For myself, I see no need for the heavy reliance the Court places on *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), in reaching this result. The main thrust of *Commonwealth v. Clair* was to discard the limited exception which had previously existed in criminal cases to the general rule of the necessity to preserve points for appeal by proper and timely exception or objection at the trial level, the exception being that if the error were "basic and fundamental", it might be entertained. Similar action had recently been taken with regard to the same exception in civil cases. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). Believing that there was utili-

While not necessary to its decision, in view of the rationale set forth in part II of the Opinion, the Court nevertheless takes occasion to reaffirm another recent line of cases, to my mind at least as mischievous as the *Wayman* footnote, *viz.*, those which give retrospective application to the prophylactic exclusionary rule contained in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). I must again register emphatic disagreement with this conclusion as unsupported by authority and unwise as policy.[2]

The Court bases its reasoning on the preexistence of our rule of criminal procedure relating to prompt arraignment.[3] It explains: "In the instant situation the rules of criminal procedure, at the time of the arrest in question, expressly set forth the required standard of conduct. That standard was in no way altered by our decision in *Commonwealth v. Futch, supra.* Rather, the *Futch* decision merely explained the consequences that would follow a violation of the prescribed conduct." Opinion of the Court, *ante* at 50. The logic of the Court's conclusion that retroactivity is thus avoided escapes me. An example will suffice, I hope, to indicate the fallacy of this approach.

ty in this exception, designed to assure fundamental fairness in the conduct of a trial, I was obliged to dissent in both these cases. This view in no way dilutes my approval of the recent emphasis of the Court, exemplified by the instant case, on the necessity to preserve issues for appellate review by the appropriate means at trial and intermediate stages.

2. For prior expressions of dissent to retrospective treatment of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), see my Dissenting Opinions in *Commonwealth v. Cullison*, 461 Pa. 301, 304–305, 336 A.2d 296, 297 (1975); *Commonwealth v. Johnson*, 459 Pa. 171, 176–177, 327 A.2d 618, 620 (1974); *Commonwealth v. Wilson*, 458 Pa. 285, 288, 327 A.2d 621, 622–23 (1974); *Commonwealth v. Cherry*, 457 Pa. 201, 206, 321 A.2d 611, 613 (1974); *Commonwealth v. Dixon*, 454 Pa. 444, 448, 311 A.2d 613, 615 (1973); *Commonwealth v. Dutton*, 453 Pa. 547, 551, 307 A.2d 238, 240 (1973).

3. Pa.R.Crim.P. 130, 19 P.S. Appendix (Supp.1974–75), formerly Rules 116 and 118. See the Opinion of the Court, *ante* at 50 n. 4 for a history of the rule.

It is clear that the Fourth Amendment's prohibition against "unreasonable searches and seizures" existed long before the Supreme Court of the United States decided the case of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). In *Mapp*, the Court extended to the states the rule prohibiting the use of unconstitutionally seized evidence. If the views of our Court today on retroactivity were correct, then the United States Supreme Court should have concluded that the exclusionary rule should be applied to all cases arising since the adoption of the Fourth Amendment. In fact, however, the Court in *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), struggled with the question of the degree of retroactivity to be given the *Mapp* decision. Its conclusion was that *Mapp* was not to be given full retroactive effect in that it was not to be applied to any case finally decided prior to the date of the *Mapp* decision. By the same token, the mere fact that our rule of criminal procedure requiring prompt arraignment was in existence some seven years prior to the *Futch* decision does not by any means serve to erase the retroactivity issue.

It is not inappropriate to reiterate here the basis of my conviction that retroactive treatment should not be accorded the *Futch* exclusionary rule, which, like its federal prototype [4] was not based on constitutional considerations, but on the Court's supervisory power over the administration of justice in Pennsylvania. As I stated in *Commonwealth v. Dutton, supra,* even if we were to apply the criteria relevant to determining retroactivity as to a novel constitutional pronouncement, the *Futch* rule would not qualify:

> "Examining *Futch* in this light, I can only conclude that its purpose will be fully realized by a solely prospective application.

4. *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

"The *Futch* exclusionary rule contributes nothing to the certainty of the judicial factfinding process. As Mr. Justice Eagen pointed out in his concurring opinion in *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973), the rule is directed entirely to police conduct prior to trial and operates irrespective of the reliability or probative value of the evidence excluded. One may hope that the threat of exclusion will help to deter dilatory or illegal police conduct, but it can hardly be supposed that application of the exclusionary rule to events long past will add anything to the rule's deterrent force for the future. On the other hand, the Court's opinion may have grave repercussions on the administration of justice. No one knows how many prosecutions have been instituted since January 1, 1965 in reliance on our pre-*Futch* rules of admissibility, but there must have been a great many. Now, it appears, any defendant convicted on the basis of evidence which under *Futch* should be excluded is entitled to a new trial, regardless of the fairness of his original trial. I see nothing to be gained from saddling our judicial system with this potentially staggering burden." 453 Pa. at 552–53, 307 A.2d at 241 (footnote omitted).

Some idea of the degree to which the judicial system has already been burdened by the retrospective treatment accorded to *Futch* may be gained merely by a listing only of the cases which have reached this Court wherein the arrest of the defendant preceded the date of announcement of the *Futch* decision.[5] Obviously this listing re-

5. *Commonwealth v. Peters*, 453 Pa. 615, 306 A.2d 901 (1973); *Geiger Appeal*, 454 Pa. 51, 309 A.2d 559 (1973); *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973); *Commonwealth v. Dixon*, 454 Pa. 444, 311 A.2d 613 (1973); *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974); *Commonwealth v. Hancock*, 455 Pa. 583, 317 A.2d 588 (1974); *Commonwealth v. Terry*, 457 Pa. 185, 321 A.2d 654 (1974); *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974); *Commonwealth v. Johnson*, 459 Pa. 171, 327 A.2d 618 (1974); *Commonwealth v. Sanders*, 458 Pa. 281, 327 A.2d 43 (1974); *Commonwealth v. Wilson*, 458 Pa. 285, 327 A.2d 621 (1974); *Com-*

veals only the "top of the iceberg" as far as the total effect on the courts of this Commonwealth is concerned. While it may be that most of such cases have by now been disposed of, I see no justification for the perpetuation of a rule so mistaken as the one under consideration.

JONES, C. J., and EAGEN, J., join in this concurring opinion.

ROBERTS, Justice (dissenting).

Today's decision rejects the salutory principles announced in *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973), and holds that failure to pursue a remedy at trial that was non-existent at that time constitutes a forfeiture of that claim. Because our jurisprudence does not impose a waiver upon an accused for failure to claim at trial a remedy which was newly announced months after his trial, I dissent.

On April 10, 1971, one John Mikalonis was shot to death on a Philadelphia street. Five days later, at about 11:00 p. m., appellant, a suspect in the slaying, surrendered to the Philadelphia police. For at least the next 24 hours, the police delayed appellant's preliminary arraignment while appellant was subjected to four interrogation sessions conducted by relays of detectives and to long periods of isolation.

Throughout the first 22 hours, appellant persistently denied complicity in the crime. However, at about 8:00 p. m., April 26, 22 hours after arrest, the police brought appellant's younger brother, Isaac, into the interrogation room. Isaac told appellant that he had given the police a

monwealth v. Blagman, 458 Pa. 431, 326 A.2d 296 (1974); Commonwealth v. Wilson, 458 Pa. 285, 329 A.2d 881 (1974); Commonwealth v. Bryant, 461 Pa. 3, 334 A.2d 603 (1975); Commonwealth v. Davis, 460 Pa. 644, 334 A.2d 275 (1975); Commonwealth v. Barilak, 360 Pa. 449, 333 A.2d 859 (1975); Commonwealth v. Hamilton, 460 Pa. 686, 334 A.2d 588 (1975); Commonwealth v. Abner, 460 Pa. 321, 333 A.2d 747 (1975); Commonwealth v. Cullison, 461 Pa. 301, 336 A.2d 296 (1975); Commonwealth v. Doamaral, 461 Pa. 517, 337 A.2d 273 (1975).

statement implicating appellant in the killing. Following this confrontation, appellant gave the police four statements in which he admitted killing the deceased.

Prior to trial, appellant sought the suppression of his statements on the ground that they were involuntarily given. The suppression court denied this motion. Subsequently, the statements were admitted into evidence at appellant's jury trial.

At the conclusion of trial, the jury returned a verdict finding appellant guilty of murder in the second degree. Appellant's post-verdict motions, filed on January 12, 1972, did not raise the admissibility of his confession. These motions were denied on April 10, 1972, 10 days before this Court decided *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). Sentence of 10 to 20 years imprisonment was imposed.

Subsequently, appellant appealed to this Court and claimed that his confession was the product of an unnecessary delay between arrest and preliminary arraignment, and, therefore inadmissible under *Futch*. Appellate consideration of appellant's claim is in accordance with *Commonwealth v. Wayman*, 454 Pa. 79, 82 n. 1, 309 A.2d 784, 786 n. 1 (1972). However, a majority of the Court now opts for an avulsive change in the law by concluding that appellant has waived his *Futch* claim.

In *Wayman*, this Court held that an appellant whose judgment of sentence was imposed prior to the date of our decision in *Futch* and who had never raised the *Futch* issue prior to appeal might still obtain relief on that claim on appeal. We gave two reasons for this result.

Primarily *Wayman* was a consistent application of the familiar and the eminently sensible principle that

" ' "it would be manifestly unfair to hold appellant to a waiver when this waiver is alleged to have occurred at a time when neither the defendant nor his attorney

had any way of knowing that there existed a right to be waived." [*Commonwealth v. Cheeks,* 429 Pa. 89, 95, 239 A.2d 793, 796 (1968)] *Cheeks* and its progeny . . . establish the rule that failure to raise an issue in a prior proceeding is not a waiver when the *legal principles* upon which the issue is premised are *newly announced* in an appellate decision rendered subsequent to the date of the prior proceeding.' "

*Commonwealth v. Wayman,* supra, at 82 n. 1, 309 A.2d at 786 n. 1, quoting *Commonwealth v. Simon,* 446 Pa. 215, 218, 285 A.2d 861, 862 (1971) (emphasis supplied in *Simon*). Accord, *Commonwealth v. Baity,* 428 Pa. 306, 237 A.2d 172 (1968); *Commonwealth v. Jefferson,* 423 Pa. 541, 226 A.2d 765 (1967). See also *O'Connor v. Ohio,* 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189 (1966); *Kuchinic v. McCrory,* 422 Pa. 620, 222 A.2d 897 (1966).

Implicit in our *Wayman* decision is the view that, although appellant and his counsel could have been aware that Pa.R.Crim.P. 122 and 130 both required prompt preliminary arraignment, they could not be expected to foresee that this Court would later decide that violation of those rules by law enforcement officials rendered inadmissible evidence obtained as a result of the unnecessary delay. Prior to this Court's decision in *Futch,* Rules 122 and 130 created a right but announced no remedy for its violation. Thus in cases like *Wayman* and the present one, the defendant had no reason to raise that issue in the trial court. Therefore, this Court concluded in *Wayman* that because it is simply unrealistic to expect appellant to seek at trial a remedy which is first announced in a subsequent appellate decision, *Wayman's* failure to raise the *Futch* issue did not constitute a waiver. One can hardly be said to waive an unknown right.

As an alternative basis for our decision in *Wayman,* we determined that the *Futch* issue was properly preserved because Wayman had challenged the admissibility of his confession at every relevant stage in the trial

court. Although some of the language in this part of *Wayman* may not seem to be totally consistent with our decision in *Kimmel v. Somerset County Commissioners,* 460 Pa. 381, 333 A.2d 777 (1975), I find it unnecessary to determine whether *Kimmel* affects this portion of *Wayman.* As already indicated, appellant did not raise the validity of his confession in the post-verdict motions he filed three months before *Futch.* Therefore, appellant is entitled to relief on his *Futch* claim, only under the primary rationale for our decision in *Wayman.* *Kimmel* does not affect that part of our *Wayman* decision.

The opinion announcing the result, relying heavily on *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Dilliplaine v. Lehigh Valley Trust Co.,* 457 Pa. 255, 322 A.2d 114 (1974), and our cases holding that parties will not on appeal receive relief on grounds not raised at every relevant stage of trial, concludes that the logical support for *Wayman* has been undermined. As the opinion announcing the result correctly points out the teaching of these cases is that courts should not "accept issues that could have and should have been first presented to the courts below for their consideration." Ante at 52. This obviously refers to known or existing rights and remedies—not to instances where at the time there was no right or remedy to claim. Our holding in *Wayman* is that in cases similar to it, the *Futch* issue is not one that as a practical matter "could have and should have" been raised in the trial court.

The only argument that the opinion announcing the result can muster to support its implicit view that appellant "could have and should have" presented the *Futch* issue is that it is somehow unfair "to penalize police officials for not anticipating the imposition of a sanction for such a violation and at the same time relieve the defense from the responsibility of timely raising the objection." In my view this statement is transparently wrong. It

confuses a right of the accused to assert a procedural protection announced subsequent to the accused's trial with the responsibility of the police to observe a rule of conduct in existence six years prior to the interrogation in the present case.

Contrary to the assertion of the opinion announcing the result, application of the *Futch* exclusionary rule does not place upon the police any new requirement relating to their conduct of interrogations. Rule 130 (or its predecessors) has been in effect since 1965. Regardless of the nonexistence of a remedy for violation of the Rule, the police were obligated to adhere to the Rule.* However, *Futch* did effect a change in the conduct of defense strategy, a change that counsel should not be held to have foreseen. It must therefore be concluded that *Wayman* does not in fact place unequal burdens upon the police and the defense.

Nor can it be assumed that the need for judicial economy justifies today's result. While conserving judicial resources and speeding the resolution of litigation are certainly important goals, these desirable objections will not be achieved by exposing the quality of justice to the hazards of arbitrary insistence upon "assembly-line" disposition of cases.

Because in my view, appellant's *Futch* claim was not waived, I must reach the merits of appellant's claim.

In *Commonwealth v. Futch*, we held that evidence obtained during a period of unnecessary delay between ar-

---

* Furthermore I cannot agree that the purpose of the exclusionary rule is to "penalize" the police. The reason for the rule is, instead, to deter illegal conduct by removing an incentive for violation of the accused's rights.

If the courts permit the admission of the products of illegal policy activity and allow their use as a means of convicting people whom law enforcement officers conceive it to be their job to get convicted, it is not merely tolerating but inducing illegal police conduct. They thus become "government purchasing agents for evidence branded with the stamp of illegality . . . ." Amsterdam, Prospectives on the Fourth Amendment, 58 Minn.L. Rev. 349, 431–32 (1974).

rest and preliminary arraignment is inadmissible unless it "has no reasonable relationship to the delay whatsoever." Id., 447 Pa. at 394, 290 A.2d at 417. In the present case, appellant made the incriminating statements after 22 hours of delay before preliminary arraignment. Appellant argues that this delay was unnecessary, that his statement was a product of the delay and, therefore, that his statement was inadmissible.

The Commonwealth does not contend that the delay was not unnecessary. Instead, it maintains that the confession was not a product of the delay but of appellant's confrontation with his brother.

We have previously held that where a confession obtained during a period of unnecessary delay is triggered by something other than interrogation, the resulting confession is nevertheless a product of the delay. Thus in *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974), an appellant who had initially maintained that he was not involved in the crime for which he was convicted changed his story after more than 12 hours of pre-arraignment delay when he was confronted with the results of a polygraph test that suggested that he was lying. This Court concluded that the statement was a product of the delay:

"Since appellant was originally unwilling to admit his complicity in the crime, and did not do so until after he was told that he had failed the polygraph test, some twelve hours later, during which time he had been subjected to over six hours of questioning and a lengthy period of isolation, we are convinced that appellant would not have changed his mind were it not for the events which transpired during the delay."

Id. at 204, 321 A.2d at 612.

In two cases following *Cherry, Commonwealth v. Bey*, 462 Pa. 533, 341 A.2d 907 (1975) (per Nix, J., joined by Manderino & Roberts, JJ.), and *Commonwealth v. Doamaral*, 461 Pa. 517, 337 A.2d 273 (1975) (per Manderi-

no, J., joined by O'Brien & Roberts, JJ.), the opinions announcing the judgment rejected the contention that a statement made during an unnecessary delay after the accused had been informed that a witness had implicated him in the crime was not a product of the delay.

"After determining that a delay existed, our inquiry should focus on whether such delay was unnecessary, whether prejudicial evidence was obtained, and whether such prejudicial evidence was reasonably related to the delay. *Commonwealth v. Wayman*, 454 Pa. 79, 309 A.2d 784 (1973). In the instant appeal there is no doubt as to the first two points of inquiry. . . . As to the third consideration, it is true that appellant denied involvement in the incident until informed of the witness's accusation, however, the fact that the accusation may have *combined* with the unnecessary delay to induce appellant's confession does not mean that the confession is admissible. We did not say in *Futch* that the unnecessary delay must be the *sole* cause of the confession for the confession to be inadmissible. We said that all evidence obtained during an unnecessary delay, except that which has no reasonable relationship to the delay whatsoever, should be excluded. It cannot be said that the confession in the instant appeal had no relationship whatsoever to the twelve hour delay. The fact that the confession may have also been related to other events which occurred during the delay does not eliminate its relationship with the delay." (Emphasis in original).

*Commonwealth v. Doamaral*, 461 Pa. 517, 521–522, 337 A.2d·273, 275–76 (1975).

In my view, the present case is indistinguishable from *Bey, Doamaral,* and *Cherry,* and appellant has stated a claim under *Futch* upon which he is entitled to relief. I would therefore reverse the judgment of sentence and remand this case for a new trial.

MANDERINO, J., joins in this dissenting opinion.